No. 06-1706

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

BRANDI STANDRIDGE, *et al*.,

        Plaintiffs-Appellees,

v.

UNION PACIFIC RAILROAD COMPANY,

        Defendant-Appellant.

On Appeal from the United States District Court
for the District of Nebraska,

The Honorable Laurie Smith Camp, Presiding

BRIEF FOR CERTAIN MEMBERS OF THE CONGRESS OF THE UNITED STATES:  SENATORS OLYMPIA J. SNOWE, HARRY REID, PATTY MURRAY, BARBARA MIKULSKI AND MARIA CANTWELL AND REPRESENTATIVES NITA M. LOWEY, LOUISE M. SLAUGHTER, DIANA DEGETTE, CHRIS SHAYS, BETTY MCCOLLUM, HENRY A. WAXMAN, SHERROD BROWN, DONNA M. CHRISTENSEN, JOSEPH CROWLEY, SAM FARR, RAÚL M. GRIJALVA, JANE HARMAN, SHEILA JACKSON LEE, EDDIE BERNICE JOHNSON, DENNIS J. KUCINICH, CAROLYN MALONEY, JAMES P. MCGOVERN, JERROLD NADLER, JAN SCHAKOWSKY, ALLYSON Y. SCHWARTZ, DIANE E. WATSON, ANTHONY D. WEINER, ALBERT R. WYNN, RUSH D. HOLT AND JIM MORAN

Barbara Sicalides
Elizabeth Campbell
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
Telephone: 215-981-4783

Terry L. Fromson
WOMEN'S LAW PROJECT
125 S. 9th Street, Suite 300
Philadelphia, PA  19107
Telephone: 215-928-9801

Susan Frietsche
WOMEN'S LAW PROJECT
425 Sixth Avenue, Suite 1860
Pittsburgh, PA  15219
Telephone: 412-227-0301
*Counsel for Amici Curiae*

# STATEMENT OF INTEREST OF THE *AMICI CURIAE*

*Amici Curiae* are a bipartisan group of members of the United States Congress who share a commitment to prohibiting discrimination in private employment. *Amici* seek to assist the Court by sharing their insights and information concerning the intent of Congress underlying the Pregnancy Discrimination Act ("PDA"). The PDA expanded Title VII's prohibition against discrimination in the workplace to require equal treatment of women affected, in all aspects of employment, by pregnancy, childbirth, or related medical conditions. Some of the *amici* served in Congress during the deliberations leading to the enactment of the PDA, and all of the *amici* have specialized knowledge of the legislative process. *Amici* are deeply concerned that the PDA be interpreted in a manner consistent with Congress' intent to protect women from workplace discrimination and to eliminate employment discrimination based on pregnancy or reproductive capacity.

# ARGUMENT

I.  **DISCRIMINATION BASED ON WOMEN'S REPRODUCTIVE CAPACITY IS PROHIBITED BY THE PREGNANCY DISCRIMINATION ACT OF 1978.**

Congress specifically designed the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k), ("PDA" or "Act"), to remedy discrimination against women in the workforce related to their ability to bear children. Exclusion of contraception from an employer-sponsored health plan is a classic form of

discrimination based on ability to bear children because women need prescription contraception to control their reproductive capacity. Appellant's narrow reading of the PDA to exclude this form of discrimination is inconsistent with this purpose and with the language of the Act. The members of Congress on whose behalf this brief is submitted agree that to achieve the Act's objective, the PDA must cover discrimination based on reproductive capacity as a pregnancy-related condition. Accordingly, we urge this Court to find that Appellant's contraceptive exclusion violates Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.

### A. Congress Enacted the PDA to Protect Women From Discrimination Based on Reproductive Capacity.

Congress enacted Title VII to prevent employers from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Congress always intended the "because of sex" language in Title VII to include discrimination based on reproductive capacity in general. In *General Elec. Co. v. Gilbert*, 429 U.S. 125 (1976), however, the Supreme Court misunderstood Congress' intent and ruled that "an exclusion of pregnancy from a disability-benefits plan providing general coverage is not a gender-based discrimination at

-2-

Appellate Case: 06-1706     Page: 3     Date Filed: 07/19/2006 Entry ID: 2069390

all." *Id*. at 136. In order to correct the Supreme Court's ruling in *Gilbert*, Congress amended Title VII to "clarify its intent," H.R. Rep. No. 95-948, 95th Cong., 2d Sess. 2 (1978) [hereinafter H.R. Rep.] and to provide explicitly that discrimination "on the basis of sex" includes, but is not limited to, discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

In enacting the PDA, Congress made clear that the dissenters in *Gilbert* had correctly understood the meaning of Title VII. *Cal. Fed. Sav. & Loan Ass'n. v. Guerra*, 479 U.S. 272, 277 n.6 (1987);[1] *see Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 678 (1983);[2] s*ee also* Staff on S. Comm. on Labor and Human Resources, Legislative History of the Pregnancy Discrimination Act of 1978 at 148 (Comm. Print 1979) [hereinafter Leg. Hist.]. The *Gilbert*

---

[1] Further, the reporting committee explicitly approved the passage from Justice Stevens' Gilbert dissent as "correctly express[ing] both the principle and the meaning of title VII". Staff on S. Comm. on Labor and Human Resources, Legislative History of the Pregnancy Discrimination Act of 1978 at 39-40, 148 (Comm. Print 1979) [hereinafter Leg. Hist.], S. Rep. No. 95-331, 95th Cong., 1st Sess. (1977) at 2–3 [hereinafter S. Rep.], Leg. Hist. at 148-49; H.R. Rep. at 2-3; see also Leg. Hist. at 168 (remarks of Rep. Sarasin).

[2] Through the PDA, Congress "unambiguously expressed its disapproval of both the holding and the reasoning of the Court in the Gilbert decision," and instead took the view that it was "'the dissenting Justices [who] correctly interpreted the Act." *Id*. (quoting H.R. Rep. No. 95-948, 95th Cong., 2d Sess. 2 (1978) [hereinafter H.R. Rep.]).

-3-

dissenters carefully explained that Congress intended pregnancy-based discrimination to constitute sex discrimination because "it is the capacity to become pregnant which primarily differentiates the female from the male." 429 U.S. at 162 (Stevens, J., dissenting). The dissent in *Gilbert* noted that insurance programs are concerned with future risks. *Id.* at n.5 (Stevens, J., dissenting). Thus, the correct frame of reference is not "pregnant women and nonpregnant persons," but rather "persons who face a risk of pregnancy and those who do not." *Id*.

The language Congress used in the PDA confirms its intent to prevent employers from discriminating against women based on their use of and need for contraceptives to control their ability to become pregnant. The PDA amends Title VII, which prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The PDA specifically states that "the terms 'because of sex' or 'on the basis of sex' *include, but are not limited to* . . . pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k) (emphasis added).[3] The phrase "include, but is not limited to," requires a broad

---

[3] The PDA provides, in pertinent part:

> The terms 'because of sex' or 'on the basis of sex'
> *include, but are not limited to*, because of or on the basis

(continued...)

-4-

interpretation of the terms "sex," "pregnancy" and "pregnancy . . . related medical conditions." *See, e.g.*, *Pacourek v. Inland Steel*, 858 F. Supp. 1393, 1402 (N.D. Ill. 1994) (stating that "'[r]elated' is a generous choice of wording, [and] suggesting that interpretation should favor inclusion rather than exclusion in the close cases"). Moreover, Congress' word choice makes clear that items other than those explicitly mentioned are protected. Because only women can become pregnant and Congress mandated a broad reading of the Act, both the letter and spirit of the Act compel the conclusion that the Act prohibits discrimination in employment benefits related to reproductive capacity. A narrower reading of the Act would render the words "include, but are not limited to" meaningless.[4]

_____

(continued...)

> of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k) (emphasis added).

[4] The PDA's legislative history reflects Congress' intent to amend Title VII to outlaw "a classification that harms only women and does so on the basis of a factor inextricably linked to gender . . . ." Leg. Hist. at 24 (remarks of Rep. Hawkins); *see also* S. Rep. at 3-4, Leg. Hist. at 40-41 (describing the bill as "defin[ing] sex discrimination . . . to include these physiological occurrences peculiar to women"); H.R. Rep. at 5, Leg. Hist. at 151 ("the bill makes clear that
(continued...)

Appellate Case: 06-1706    Page: 6    Date Filed: 07/19/2006 Entry ID: 2069390

Because many women facing a risk of pregnancy use prescription contraceptives to control their reproductive capacity, exclusion of prescriptive contraceptive coverage from an otherwise comprehensive employee benefits plan

_____

(continued...)

its protection extends to the whole range of matters concerning the childbearing process").

The reporting committee specifically recognized that it is "the capacity to become pregnant which primarily differentiates the female from the male." S. Rep. at 3, Leg. Hist. at 40. Indeed, the committee expressed its intent that the PDA instruct employers that "thou shalt not discriminate against a classification within the work force, women, because women are uniquely capable of becoming pregnant." Leg. Hist. at 69 (remarks of Sen. Bayh). As Senator Williams – the chief sponsor of the bill in the Senate and the chairperson of the committee that reported on the bill – explained, the concept that discrimination based on childbearing capacity is unlawful under Title VII is central to the purpose of the PDA:

> These shocking statistics [concerning job segregation of women] cannot be made better unless working women are provided effective protection against discrimination on the basis of their childbearing capacity. . . . Because of their capacity to become pregnant, women have been viewed as marginal workers not deserving the full benefits of compensation and advancement granted to other workers. . . . Thus, the overall effect of discrimination against women because they might become pregnant, or do become pregnant, is to relegate women in general and pregnant women in particular, to a second-class status with regard to career advancement and continuity of employment and wages.

Leg. Hist. 61–62; *see also* Leg. Hist. at 168 (remarks of Rep. Hawkins) ("many of the disadvantages imposed on women are predicated upon their capacity to become pregnant").

violates the protections afforded by the PDA. *Accord Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 211 (1991) (finding that the PDA's prohibition on pregnancy discrimination applied not only to policies that affect pregnant women, but also to "discrimination on the basis of a woman's ability to become pregnant").

### B. The EEOC Has Confirmed that Congress Intended the PDA to Mandate Coverage for Contraceptives.

Two rulings of the Equal Employment Opportunity Commission (EEOC) confirm that the PDA was intended to prohibit exclusion of prescription contraceptives from otherwise comprehensive employer-sponsored prescription coverage. In *Coverage of Contraception*, 2000 WL 33407187, at *2 (EEOC Dec. 14, 2000), the EEOC ruled that

> "the PDA's prohibition on discrimination against women based on their ability to become pregnant thus necessarily includes a prohibition on discrimination related to a woman's use of contraceptives. [Employers] may not discriminate in their health insurance plan by denying benefits for prescription contraceptives when they provide benefits for comparable drugs and devices."

*Id*. at *2. ("Congress enacted the Pregnancy Discrimination Act (PDA) to explicitly require equal treatment of women 'affected by pregnancy, childbirth, or related medical conditions' in all aspects of employment, including receipt of fringe benefits." (quoting 42 U.S.C. § 2000e(k))).

In addition, EEOC Guidelines adopted at the time of the PDA's enactment interpret the PDA to mean that an employer may not discharge, refuse

-7-

Appellate Case: 06-1706    Page: 8    Date Filed: 07/19/2006 Entry ID: 2069390

to hire, or otherwise discriminate against a woman because she has had an abortion. *See* 29 C.F.R. pt. § 1604 App. (1997); *see also Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996) ("Because [the PDA] applies to all situations in which women are 'affected by pregnancy, childbirth and related medical conditions,' its basic language covers women who chose to terminate their pregnancies.") (citation omitted). H.R. Rep. No. 95-1786, at 4 (Conf. Rep.), *as reprinted* in 1978 U.S.C.C.A.N. 4765, 4766 (same). These guidelines confirm that the PDA's prohibition of discrimination on the basis of sex extends to women who wish to avoid pregnancy. Because the PDA prohibits discrimination on the basis of the abortion choice, "*a fortiori*, it encompasses discrimination against women who seek services designed to prevent conception." *See Turic*, 85 F.3d at 1214, *construed in* Sylvia A. Law, *Sex Discrimination and Insurance for Contraception*, 73 Wash. L. Rev. 363, 382 (1998).

Moreover, in *Coverage of Contraception*, 2000 WL 33407187, at *2, the EEOC concluded that the PDA's coverage of prescriptive contraceptives is "supported by additional language in the PDA that specifically exempts employers from any obligation to offer health benefits for abortion in most circumstances." The EEOC explains:

> Congress understood that absent an explicit exemption, the PDA would require coverage of medical expenses resulting from a woman's decision to terminate a pregnancy. . . Had Congress meant to limit the

-8-

> applicability of the PDA to contraception, therefore, it would have enacted a statutory exemption similar to the abortion exemption. Such an exemption, of course, does not exist for contraceptives.

*Id.* at *2-3. The EEOC understood that Congress intended for the PDA to protect women from inequity solely because they can become pregnant.

## II.   THE PDA'S SCOPE DOES NOT CONFLICT WITH PENDING FEDERAL LEGISLATION

In an effort to ensure that all women, not just those women covered under the PDA, would not suffer discrimination through the inequitable denial of prescription contraceptives, for several years many of the undersigned members of Congress have attempted to enact federal legislation known as the Equity in Prescription Insurance and Contraceptive Coverage Act of 2005 ("EPICC"), S. 1214, 109th Cong. (2005); H.R. 4651, 109th Cong. (2005). This legislation would mandate equitable treatment of contraceptive coverage in all health plans. Nothing in this attempt to enact EPICC casts doubt on the conclusion that the PDA already requires equitable prescription coverage in health plans subject to Title VII, as confirmed by comments of EPICC sponsors on the December 2000 EEOC Commission Decision. *See, e.g.*, 147 Cong. Rec. S356, 357-77 (daily ed. Jan. 22, 2001) (statements of Sen. Reid (D-NV) and Sen. Snowe (R-ME)); Press Release, Sen. Reid, "Reid Lauds EEOC Ruling on Contraceptive Health Coverage" (Dec. 14, 2000) (on file with author).

-9-

Appellate Case: 06-1706     Page: 10     Date Filed: 07/19/2006 Entry ID: 2069390

Indeed, when speaking in support of EPICC and about the EEOC's decisions which found that two benefits plans were discriminatory under the PDA because they failed to provide coverage for prescription contraceptives, certain members of Congress remarked:

> The EEOC ruling is an important step toward ensuring that women have access to affordable contraceptives. At the same time, it highlights the importance of our legislation because title VII applies only to employers; it does not cover insurance providers. An estimated 16 million Americans obtain health insurance from private insurance other than employer-provided plans. Only the enactment of EPICC will ensure that contraceptive coverage is offered by insurance providers.

147 Cong. Rec. S356, 375 (daily ed. Jan. 22, 2001) (statement of Sen. Reid).

> [T]he 1978 Pregnancy Discrimination Act . . . requires equal treatment of women "affected by pregnancy, childbirth or related medical conditions," in all aspects of employment, including fringe benefits. . . . The Pregnancy Discrimination Act—and this EEOC decision—only reaches employers of 15 people or more. The Equity in Prescription Insurance Contraceptive Coverage Act reaches all insurance plans, no matter the size, and includes individual insurance—not just employer-sponsored insurance plans.

147 Cong. Rec. S356, 376 (daily ed. Jan. 22, 2001) (statement of Sen. Snowe).

EPICC is necessary even when the PDA is properly interpreted and enforced, because the PDA applies only to employer-sponsored plans and only to employers of fifteen or more employees. The fact that members of Congress are working to strengthen and expand existing prohibitions against gender-based

discrimination should not be used as a rationale for interpreting those existing protections unduly narrowly.

## **CONCLUSION**

Congress intended Title VII to prohibit discrimination on the basis of reproductive capacity, including the exclusion of prescription contraceptive coverage from otherwise comprehensive health insurance plans. For the reasons

set forth herein, *Amici Curiae* respectfully urge this Court to affirm the decision of the district court.

Respectfully submitted,

Dated: June 28, 2006

/s/
Terry L. Fromson
WOMEN'S LAW PROJECT
125 S. 9th Street, Suite 300
Philadelphia, PA 19107
215-928-9801

Susan Frietsche
WOMEN'S LAW PROJECT
425 Sixth Avenue, Suite 1860
Pittsburgh, PA 15219

Barbara Sicalides
Elizabeth Campbell
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE WITH FED.R.APP.P. 32(a)(7) and EIGHTH CIR.R.28A(c) & (d)

I certify that this brief was prepared using Microsoft Word, version 2003 and that it contains 1,933 words, including all headings, citations, and footnotes, and therefore is in compliance with Federal Rule of Appellate Procedure 29(d), which limits amicus briefs to no more than 7,000 words (not including the table of contents, table of authorities, and certificates of counsel).  The CD-ROM containing this brief has been scanned for viruses and is virus-free.

/s/
Barbara Sicalides

# CERTIFICATE OF SERVICE

I hereby certify that I have this 28th day of June 2006, filed the foregoing Brief of Amicus for Appellees and CD-ROM containing the motion and brief by Federal Express in accordance with Federal Rule of Appellate Procedure 25(a)(2)(B) and served the foregoing Brief of Amicus for Appellees to counsel for Appellees, Appellant and Amici for Appellant by sending two copies thereof as follows:

Thomas J. Mikula
Donald J. Munro
Jeffrey D. Fox
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, DC 20001

Brian J. McGrath
Lamson, Dugan & Murray, LLP
10306 Regency Parkway Drive
Omaha, NE 68114

Ann Elizabeth Reesman
Laura Anne Giantris
McGuiness Norris & Williams, LLP
1015 Fifteenth Street, N.W., Suite 1200
Washington, DC 20005

Robin S. Conrad
Shane Brennan
National Chamber Litigation Center
1615 H Street, N.W.
Washington, DC 20062

Michael L. Schleich
Fraser, Sryker, Meusey,
Olson, Boyer & Bloch, PC
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102

Brian N. Woolley
Lathrop & Gage, LC
2345 Grand Boulevard, Suite 2800
Kansas City, MO 64108-2612

T. David Copley
Keller Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

Roberta Riley
Planned Parenthood of Western
Washington
2001 East Madison
Seattle, WA 98122

Rex A. Sharp
Barbara Frankland
Gunderson, Sharp & Walke, PC
4121 W. 83rd Street, Suite 256
Prairie Village, KS 66208

Sylvester "Sly" James, Jr.
The Sly James Firm Trial Lawyers, PC
802 Broadway, 7th Floor
Kansas City, MO 64105

-15-

Rick D. Holtsclaw
Holtsclaw & Kendall, LC
2029 Wyandotte, Suite 100,
Kansas City, MO 64108

                                        /s/
                                 Barbara Sicalides

-15-

# **TABLE OF CONTENTS**

                                                                                  **Page**

STATEMENT OF INTEREST OF THE *AMICI CURIAE* .........................................1

ARGUMENT .................................................................................................................1

I.     DISCRIMINATION BASED ON WOMEN'S REPRODUCTIVE CAPACITY IS PROHIBITED BY THE PREGNANCY DISCRIMINATION ACT OF 1978..............................................................................1

         A.  Congress Enacted the PDA to Protect Women From Discrimination Based on Reproductive Capacity. ................................2

         B.  The EEOC Has Confirmed that Congress Intended the PDA to Mandate Coverage for Contraceptives...................................................7

II.    THE PDA'S SCOPE DOES NOT CONFLICT WITH PENDING FEDERAL LEGISLATION ............................................................................9

CONCLUSION.................................................................................................... 111

# TABLE OF AUTHORITIES

## CASES

Cal. Federal Sav. & Loan Association v. Guerra, 479 U.S. 272 (1987)....................3

General Electric Co. v. Gilbert, 429 U.S. 125 (1976) ...........................................3, 4

International Union v. Johnson Controls, Inc., 499 U.S. 187 (1991) .......................7

Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669 (1983)...............................................................................................................3

Pacourek v. Inland Steel, 858 F. Supp. 1393 (N.D. Ill. 1994)....................................5

*Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211 (6th Cir. 1996)..............................8

## ADMINISTRATIVE DECISIONS

Coverage of Contraception, 2000 W.L. 33407187 (EEOC Dec. 14, 2000) ......7, 8, 9

## STATUTES

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* ....................................2, 3, 4, 7

Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k)..................1, 3, 4, 5, 7

## LEGISLATIVE HISTORY

H.R. Rep. No. 95-948, 95th Cong., 2d Sess. 2 (1978) ..........................................3, 5

S. Rep. No. 95-331, 95th Cong., 1st Sess. (1977) at 2–3  .....................................3, 5